UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWIGHT D. TRIMBLE, II,

        Plaintiff,

v.

MICHIGAN DEPARTMENT
OF CORRECTIONS, *et al.*,

        Defendants.

_____/

Case No. 1:13-cv-275

Hon. Robert J. Jonker

## REPORT AND RE COMMENDATION

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C.

§ 1983. This matter is now before the court on defendant Justin Frakes' motion for summary

judgment (docket no. 10). The motion is unopposed.

### I.      Plaintiff's complaint

This Court previously summarized plaintiff's claims as follows:

Plaintiff Dwight D. Trimble presently is incarcerated with the Michigan
Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility
(MTU). He sues the MDOC, MTU Warden C. Stoddard, and MTU Corrections
Officer (unknown) Frakes.

Plaintiff's history of the events in issue is somewhat confusing, as the
complaint goes back and forth between two time periods. It appears that Plaintiff
was sent to B-Unit during the last week of August 2012, shortly after he was released
from segregation after being found not guilty of possessing dangerous contraband.
Thereafter, Defendant Frakes and other corrections officers who are not named as
Defendants in this action repeatedly searched Plaintiff's room and threw his property
around, saying, "You want to beat our tickets we'll show you." (Compl., docket #1,
Page ID#4.) Plaintiff alleges that he became afraid of the officers and worried that
they would plant a knife or illegal drugs in his room. He therefore asked Counselors
Gilke and Bouck if they would move him to a different unit, but they refused. On
September 7, 2012, Plaintiff packed up his own property and reported to the control
center, asking to be locked in segregation for his safety. Before going to the center,

he told Defendant Frakes of his intent, gave Frakes the property list, and had Frakes sign the property receipt. When Plaintiff arrived at the control center, he was given a direct order to return to his cell. Plaintiff refused, saying that he was not going to return to B-Unit because he did not like the officers in the unit. Sergeant Bridges issued Plaintiff a misconduct ticket for disobeying a direct order. Plaintiff apparently was take [sic] to segregation.

When he was released from segregation, Plaintiff was sent back to B-Unit. His property was returned to him, but a number of items were missing, including hobby-craft property and completed craft items. Plaintiff alleges that his completed craft items were usually sent home, where they were sold on the internet. Defendant Frakes and others apparently continued to harass Plaintiff, and, on October 10, Plaintiff again packed up his property and reported to the control center for protective custody. He was again ordered back to his cell. When he refused, another misconduct ticket was issued and Plaintiff was again sent to segregation.

After he was released from segregation on October 15, 2012, Plaintiff again did not received all of his stored property. That same day, Plaintiff saw Frakes and asked about his missing property. Frakes told Plaintiff to file a complaint with Counselor Bouck. Plaintiff filed a grievance about his missing property on October 22, 2012. The grievance was denied at Step II by Defendant Stoddard. Nevertheless, on December 15, 2012, Stoddard sent Plaintiff a claim form for losses under $1,000.00. Plaintiff completed the form, seeking $461.18 in compensation for lost property.

Based on these allegations, Plaintiff contends that Defendants Frakes and Stoddard deprived him of his property without due process. He alleges that Defendant Frakes also repeatedly searched his property and took property in retaliation for Plaintiff having filed grievances or disputing misconduct charges. Plaintiff also alleges that the actions of Frakes and Stoddard violated a variety of MDOC policies. Finally, Plaintiff contends that Defendants Stoddard and the MDOC are liable for the conduct of their employees under the doctrine of respondeat superior.

Opinion at pp. 2-3 (docket no. 4).

In screening plaintiff's complaint pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, the court dismissed all defendants except Frakes. *Id.* at p. 8; Order for partial dismissal (docket no. 5). Defendant Frakes has moved for summary judgment on the ground that plaintiff failed to exhaust his administrative remedies.

## II.     Defendants' motions for summary judgment

### A.     Legal standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws.  *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984);  *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996).  To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present

significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Here, defendants' motion is unopposed. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id.* at 405.

## B.       Failure to Exhaust

### 1.       Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S.

at 741.  One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218.

## 2.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances.  *See* Policy Directive 03.02.130 (effective July 9, 2007).  A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ P.  If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff.  *Id.* at ¶¶ P and R.  The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original).  The prisoner must send the Step I grievance to the appropriate grievance coordinator.  *Id.* at ¶ V.  If the prisoner is dissatisfied with the Step I response, or does not

receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Plaintiff's failed to properly exhaust his claims

Plaintiff filed the present action on March 14, 2013. *See* Compl. (docket no. 1). In support of his complaint, plaintiff attached a copy of grievance no. MTU-12-10-1092-19d ("1092"). *See* Grievance 1092 (docket no. 1-1 at p. 5). This grievance identified the date of the incident as October 10, 2012, when defendant Frakes re-packed plaintiff's property and allegedly took or failed to return some of plaintiff's property. *Id.* This grievance, however, was not exhausted until April 12, 2013, almost one month after plaintiff filed this action. *See* Step III Grievance response (docket no. 11-4 at p. 2).

The PLRA provides that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. Thus, a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999). The uncontested record establishes that plaintiff did not exhaust grievance 1092 until after he filed his complaint in this action. Accordingly, plaintiff did not properly exhaust the claims alleged in grievance 1092. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Freeman*, 196 F.3d at 645. *See also, Cameron v. Howes*,

No. 1:10-cv-539, 2012 WL 3686535 (W.D. Mich. Aug. 6, 2012) and 2012 WL 3655460 (Aug. 24, 2012) (claim which was not exhausted until after prison filed his civil rights action was not properly exhausted).

Furthermore, defendant Frakes points out that grievance 1092 does not refer to defendant Frakes' searches of his cell which allegedly occurred prior to October 10, 2012. The Policy Directive requires a grievant to include the relevant facts involving the issue being grieved, with "[d]ates, times, places and names of all those involved in the issue being grieved." Policy Directive 03.02.130 ¶ R. As discussed, grievance 1092 does not refer to defendant Frakes' searches of his cell. Rather, the grievance is limited to claims arising from Frakes' re-packing of plaintiff's property on October 10, 2012. Based on this record, plaintiff did not properly exhaust a grievance against Frakes. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, defendant Frakes' motion for summary judgment should be granted.

### III.    Recommendation

For the reasons set forth above, I respectfully recommend that defendant Frakes' motion for summary judgment (docket no. 10) be **GRANTED** for failure to exhaust administrative remedies and that this action be **DISMISSED**.


Dated:  November 12, 2013                          /s/ Hugh W. Brenneman, Jr.
                                                   HUGH W. BRENNEMAN, JR.
                                                   United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).